# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAQUENTA MARCHANT, on behalf of A.A.H., | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 18-0345 |
| NANCY A. BERRYHILL, Acting Commissioner of Soc. Sec., | |
| Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **MAY 28, 2019**

        This action concerns Plaintiff Taquenta Marchant's ("Marchant") request, on behalf of her daughter, A.A.H., for judicial review of an adverse decision of the Social Security Administration ("SSA"). On July 26, 2018, this case was referred to the Honorable Richard A. Lloret, United States Magistrate Judge for a report and recommendation.

        Presently before the Court is the objection of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), pursuant to Federal Rule of Civil Procedure 72, to Judge Lloret's January 9, 2019 Report and Recommendation ("R. & R."), (Doc. No. 17). Judge Lloret found that the presiding administrative law judge ("ALJ") had not been properly appointed under the United States Constitution by Defendant, and that the SSA's final decision should be reversed and remanded to the agency. (R. & R. at 5.)

        Furthermore, Judge Lloret found that Marchant had not forfeited her Appointments Clause claim, which she raised for the first time in her Reply Brief, (Doc. No. 14), on the

grounds that such a claim cannot be waived and that it would have been futile for her to raise it before the agency. (*Id.*)

For the following reasons, we sustain the Commissioner's objections, overrule Judge Lloret's R. & R., and refer the matter to the Judge Lloret for a decision on the merits.

**I.     BACKGROUND**

Marchant filed a claim for supplemental security income on behalf of her daughter on April 29, 2014. (*Id.* at 2.) She alleged disability based on asthma and attention-deficit/hyperactivity disorder. (*Id.*) Her claims were initially denied on July 25, 2014. (*Id.*) Marchant subsequently requested an administrative hearing. (*Id.*) At the hearing, held on February 22, 2017, Marchant testified. (*Id.*) On May 2, 2017, the ALJ issued an opinion finding A.A.H. did not have a disability. (*Id.*) The Appeals Council denied Marchant's request for review. (*Id.*)

On January 30, 2018, Marchant initiated this action. (Def.'s Obj. R. & R. 4.) Marchant, for the first time in her Reply Brief, argued that the ALJ presiding over her hearing was not appointed consistent with the Appointments Clause. (Pl.'s Reply Br. 1–2 & n.1.) Judge Lloret, relying extensively on his similar report and recommendation in *Perez v. Berryhill*, No. 18-1907, Doc. No. 15 (E.D. Pa. Jan. 7, 2019) and Magistrate Judge Rice's report and recommendation in *Muhammad v. Berryhill*, No. 18-1907 ECF Doc. No. 14, at 25 (E.D. Pa. Nov. 2, 2018), *overruled by Muhammad v. Berryhill*, 2019 WL 2248694 (E.D. Pa. May 23, 2019), found the argument persuasive and recommended that Marchant's claim be remanded to SSA for further proceedings before a properly appointed ALJ. (R. & R. 5.) The Commissioner timely objected pursuant to Federal Rule of Civil Procedure 72.

## II.  LEGAL STANDARD

When a party objects to a magistrate judge's report and recommendation, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)) ("[T]he district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'").  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## III.  DISCUSSION

The Commissioner objects to Judge Lloret's R. & R. on the grounds he erred in considering Marchant's Appointments Clause challenge following the Supreme Court of the United States' ("Supreme Court") decision in *Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018). (Def's Obj. R. & R. 1–3.)  The Commissioner contends that Marchant waived the claim by failing to make a "timely challenge" to the constitutionality of the ALJ's appointment during the administrative process, as required by *Lucia*.  (*Id.* at 3.)  In opposition, Marchant argues that an Appointments Clause challenge cannot be waived in the SSA context, as there are only limited "issue exhaustion" requirements in SSA proceedings.  (Pl.'s Reply Br. 4–8.)  Marchant further contends that, even if she was required to make an Appointments Clause challenge at the administrative level, it would have been futile as there were no constitutionally appointed ALJs available to hear her case at the time.  (*Id.* at 2–3.)

A. *Lucia* Establishes Appointments Clause Challenges Must be Timely

In *Lucia*, the Supreme Court held that Securities and Exchange Commission ("SEC") ALJs are "inferior officers" that must be appointed pursuant to the Appointments Clause of the United States Constitution.[1] *See Lucia*, 138 S. Ct. at 2051–56. In doing so, the Court leaned heavily on its analysis in *Freytag v. C.I.R.*, 501 U.S. 868 (1991), concerning "special trial judges" ("STJs") of the United States Tax Court. *See id.* at 2052 ("*Freytag* says everything necessary to decide this case."). According to the Court, both the SEC ALJs and Tax Court STJs "hold a continuing office established by law" and "exercise the same 'significant discretion' when carrying out the same 'important functions,'" which include "ensur[ing] fair and orderly adversarial hearings." *See id.* at 2054 (quoting *Freytag*, 501 U.S. at 878). Specifically, the Court identified "four specific . . . powers" within the authority of ALJs and STJs: (1) "they [r]eceiv[e] evidence and [e]xamine witnesses at hearings" and depositions; (2) they conduct trials; (3) they "critically shape the administrative record" through rulings "on the admissibility of evidence"; and (4) they "have the power to enforce compliance with discovery orders." *See id.* (internal quotation marks omitted). The Court further highlighted the deference that the ALJ's and STJ's findings of fact are given, especially those based on credibility determinations, either as required by statute or through practice. *See id.*

The Court concluded its analysis by briefly discussing challenges made to ALJ appointments under the Appointments Clause. *See id.* at 2055. The Court stated:

> "[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case" is entitled to relief. Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the

---

[1] "The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." *Lucia*, 138 S. Ct. at 2051. If an ALJ is not considered to be a constitutional officer, then the "Appointments Clause cares not a whit about who named them." *Id.* (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1879)).

4

> Commission, and continued pressing that claim in the Court of Appeals and this Court.

*Id.* (internal citations omitted) (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)).

Though *Lucia* ostensibly concerns only SEC ALJs, courts and federal agencies have applied its reasoning across the board. *See, e.g.*, *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019) (FDIC ALJs); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018) (Department of Labor Federal Mine Safety and Health Review Commission ALJs); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254 (6th Cir. 2018) (Department of Labor Benefits Review Board ALJs); *Assoc. Mortg. Bankers, Inc. v. Carson*, No. 17-0075, 2019 WL 108882 (D.D.C. Jan. 4, 2019) (Department of Housing and Urban Development ALJs); *Morris & Dickson Co. v. Whitaker*, 360 F. Supp. 3d 434 (W.D. La. 2018) (Drug Enforcement Agency ALJs); *but see Lucia*, 138 S. Ct. at 2056 (Thomas, J., concurring) ("If the special trial judges in *Freytag* were "Officers of the United States," then so are the administrative law judges of the [SEC]. Moving forward, however, this Court will not be able to decide every Appointments Clause case by comparing it to *Freytag*.").

### 1.   *Applying* **Lucia** *to SSA Proceedings*

Perhaps the agency most impacted by *Lucia* is the SSA. *See, e.g.*, *Johnson v. Berryhill*, No. 17-1651, 2019 WL 1430242 (D. Conn. Mar. 29, 2019); *Newbill v. Berryhill*, No. 17-0410, 2019 WL 1407425 (S.D. Al. Mar. 28, 2019); *Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902 (E.D. Mich. 2018); *Stearns v. Berryhill*, No. 17-2031, 2018 WL 4380984 (E.D. Iowa Sept. 14, 2018); *but see Lucia*, 138 S. Ct. at 2058 (Breyer, J., concurring in part) (citing SSA as an agency where the Court's analysis may not apply because "[e]ach agency's governing statute is different, and some, unlike the [SEC's], may allow the delegation of duties without a published order or rule."). In applying *Lucia*, courts have struggled to interpret what constitutes a "timely

challenge" during SSA proceedings. Several courts have interpreted an Appointments Clause challenge to an SSA ALJ to be "timely" if raised at some point during the administrative process (collectively, the "Majority Decisions"). *See, e.g.*, *Velasquez on Behalf of Velasquez v. Berryhill*, No. 17-17740, 2018 WL 6920457, at *3 (E.D. La. Dec. 17, 2018) ("Accordingly, I find that plaintiff has waived the Appointments Clause issue by failing to assert it before the ALJ or the Appeals Council."); *Pearson v. Berryhill*, No. 17-4031, 2018 WL 6436092, at *4 (D. Kan. Dec. 7, 2018) ("In light of the fact that plaintiff never raised this issue before the [SSA], the court finds that plaintiff did not make a timely challenge to the constitutional validity of the appointment of the ALJ."); *Faulkner v. Comm'r of Soc. Sec.*, No. 17-1197, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018) ("Plaintiff's failure to raise his Appointments Clause challenge at any point in the administrative process or show good cause why he did not do so forfeits his claim.").

The Majority Decisions look to the fact that the plaintiff in *Lucia* raised his Appointments Clause challenge for the first time before the SEC appeals council and have, thus, required the challenge to be raised during the administrative process to be considered timely. *See, e.g.*, *Kline v. Berryhill*, No. 18-0180, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019) (citing *Lucia*, 138 S. Ct. at 2055) ("Here, Plaintiff failed to challenge the ALJ's appointment in the administrative proceeding before the SSA. Plaintiff raised this issue for the first time before this Court, and therefore, her challenge is untimely."); *Parker v. Berryhill*, No. 17-0143, 2019 WL 1396429 (E.D. Va. Mar. 21, 2019) ("[T]here are no case-specific circumstances that warrant excusing Plaintiff's failure to timely raise an appointment challenge during the administrative process . . . ."); *Abbington v. Berryhill*, No. 17-0552, 2018 WL 6561208 (S.D. Al. Dec. 13, 2018) ("Abbington has forfeited her Appointments Clause challenge to the ALJ who heard her case by

failing to raise that challenge before the [SSA], and Abbington has not shown sufficient cause to excuse the forfeiture."); *Davis v. Comm'r*, No. 17-80-LRR, 2018 WL 4300515, at *8 (N.D. Iowa Sept. 10, 2018) ("Unlike the plaintiff in *Lucia*, Davis did not contest the validity of the [SSA] ALJ who decided his case at the agency level. The record clearly demonstrates that Davis did not raise his Appointments Clause challenge before the ALJ or Appeals Council, the court finds that he has waived the issue.").

However, some of these cases have applied the specific facts of *Lucia* to SSA regulations to create a more restrictive standard than the *Lucia* Court identified (collectively, the "ALJ Cases"). While the plaintiff in *Lucia* raised his timely Appointments Clause challenge for the first time before the SEC appeals council, the ALJ Cases note that the SSA Appeals Council can only hear issues that were present in the case before the ALJ. Thus, in order to raise a timely challenge in SSA proceedings, claimants must raise an Appointments Clause challenge before the ALJ. *See Abbington*, 2018 WL 6561208, at *2 n.7 (citing *Stearns*, 2018 WL 4380984, at *5) ("In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the commission . . . . In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final . . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level."); *see also Sprouse v. Berryhill*, 363 F. Supp. 3d 543 (D.N.J. 2019) ("[T]herefore, to be present in a case, such a claim must be raised by the claimant before the ALJ.").

On the other hand, a small, but growing minority of cases, mainly from Pennsylvania, have rejected this restrictive interpretation of *Lucia*, concluding that an Appointments Clause challenge cannot be waived by failing to raise it at the administrative level (collectively, the "Pennsylvania Decisions"). These cases highlight the SSA's "less rigid" and informal

7

administrative review process. *See Culclasure v. Comm'r Soc. Sec. Admin.*, No. 18-1543, -- F. Supp. 3d --, 2019 WL 1641192, at *10 (E.D. Pa. Apr. 16, 2019); *Bradshaw v. Berryhill*, No. 18-0100, -- F. Supp. 3d --, 2019 WL 1510953 (E.D.N.C. Mar. 26, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019); *Cirko o/b/o Cirko v. Berryhill*, No. 17-0680, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019); *Perez*, ECF Doc. No. 15 (J. Lloret); *Muhammad*, ECF Doc. No. 14, at 25. These cases take issue with the interpretation that *Lucia* defined a "timely challenge" as solely being made to the Appeals Council. *See Culclasure*, 2019 WL 1641192, at *5 ("But the Supreme Court in *Lucia* did not define what is untimely. It does not hold an Appointments Clause challenge must be raised before an ALJ to be timely."); *Bizarre*, 364 F. Supp. 3d at 418 ("We acknowledge at the outset that our disagreement breaks from the emerging consensus of federal district courts to address this issue. . . . We submit that [the other courts] misapprehend[] *Lucia*."). These cases argue that courts imposing timeliness restrictions are reading too much into the actual text of the *Lucia* opinion. As we noted above, Judge Lloret's R. & R. in *Perez* provided much of the basis for his R. & R. in this case.

The disagreement between the ALJ Cases, the Majority Decisions, and the Pennsylvania Decisions stems from attempts to apply *Lucia*'s SEC framework and analysis to the SSA.[2] We

---

[2] We note that *Lucia*'s applicability to the SSA, and, thus, whether SSA ALJs are inferior officers, subject to the Appointments Clause, is not before us in this case. In fact, the Commissioner concedes that *Lucia* applies to SSA ALJs and notes that the appointments of SSA ALJs were appropriately ratified following the Supreme Court's decision. (Def.'s Obj. R. & R. 5 n.3 ("*Lucia* does not directly address the constitutional status of [ALJs] appointed under 5 U.S.C. § 3105 who, like SSA ALJs, do not possess powers equivalent to those of the SEC ALJs at issue in *Lucia*. For purposes of this brief, [Commissioner] does not argue that SSA ALJs are employees rather than inferior officers.")); (Def.'s Suppl. Br. in Supp. Obj. 2 n.2 (citing SSR 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019)) ("On July 16, 2018, the Acting Commissioner ratified the appointment of the agency's ALJ's and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims thereafter.")); *but see Lucia*, 138 S. Ct. at 2056 (Thomas, J., concurring) ("If the special trial judges in *Freytag* were "Officers of the United States," then so are the administrative law judges of the [SEC]. Moving forward, however, this Court will not be able to decide every Appointments Clause case by comparing it to *Freytag*."); *id.* at 2058 (Breyer, J., concurring in part) (citing SSA as agency where *Lucia*'s analysis may not apply because "[e]ach agency's governing statute is different, and some, unlike the [SEC's], may allow the delegation of duties without a published order or rule"). Therefore, we do not address this issue here.

find the prior interpretations of *Lucia* to the SSA by the ALJ Cases and Pennsylvania Decisions to each be overreaching. Although we agree with Commissioner that the ALJ Cases' argument is compelling and that, under *Lucia*, Appointments Clause challenges must be timely raised, (Def.'s Obj. R. & R. 10), we agree with the Pennsylvania Decisions that the ALJ Cases go too far in defining a "timely challenge" as being before the ALJ. *See Culclasure*, 2019 WL 1641192, at *5 ("[T]he Supreme Court . . . did not define what is untimely. It does not hold an Appointments Clause challenge must be raised before an ALJ to be timely.")

Thus, we find that the Majority Decisions correctly apply the Supreme Court's timeliness requirement in concluding that *Lucia* requires SSA claimants to raise an Appointments Clause challenge at some point during the administrative process. *See, e.g.*, *Velasquez*, 2018 WL 6920457, at *3 ("I am persuaded by the majority of courts' interpretation of the clear Supreme Court[] language of *Lucia* itself. Accordingly, I find that plaintiff has waived the Appointments Clause issue by failing to assert if before the ALJ or the Appeals Council."). As we discuss below, a plain language reading of *Lucia* provides an opportunity to raise the claim during the administrative process. *See Lucia*, 138 S. Ct. at 2055 ("Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission . . . ."). According to SSA regulations, a claimant must raise objections concerning the presiding ALJ "at [the] earliest opportunity." 20 C.F.R. § 404.940. Therefore, we find that the "earliest opportunity" to raise an Appointments Clause challenge is at the administrative level.

### 2. *An Appointments Clause Challenge Must be Timely*

As the disagreement over *Lucia*'s applicability to SSA proceedings arises mainly in our sister courts within the United States Court of Appeals for the Third Circuit, we briefly examine it further. The *Lucia* Court clearly indicates that "'one who makes a timely challenge to the

constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 117). The question, then, turns to what constitutes a "timely challenge?" In *Culclasure*, the court answered this question by noting that although the *Lucia* plaintiff preserved a timely Appointments Clause challenge by raising it during the administrative process, the Court was silent on instances when an Appointments Clause challenge is raised at a later point. *Culclasure*, 2019 WL 1641192, at *5 ("We will not create a bright line definition of untimely in the Social Security context based on references to timely challenges before ALJs in other agencies. The examples of 'timely' . . . do not render all other types of challenges as untimely.").

The *Culclasure* court continued by applying the *Lucia* decision to the Supreme Court's prior rejection of a "judicially created issue-exhaustion requirement" in the SSA context. *See id.* at *6 (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). "In *Sims*, the Court addressed the question of whether a claimant seeking judicial review of a denied Social Security claim waives any issue the claimant failed to include in a request for review before the Appeals Council." *Id.* The Court rejected an issue exhaustion requirement, noting that exhaustion was not required by the SSA regulations and that applying such a rule to SSA proceedings "makes little sense." *Sims*, 530 U.S. at 108, 112 (quoting *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999)). Although "[i]t is true that [the Court has] imposed an issue-exhaustion requirement even in the absence of a statute or regulation . . . ," *Sims* explained that "[t]he basis for a judicially-imposed exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* at 108–09 (citing *United States v. L.A. Trucker Truck Lines*, 344 U.S. 33, 36 (1952); *Homel v. Helvering*, 312 U.S. 552, 556 (1941)). Meaning that "it is usually

'appropriate under [an agency's] practice for contestants in an *adversary proceeding*' before it to develop fully all issues there." *Id.* at 109 (emphasis added).

However, "[t]he most important of [the SSA's modifications of the judicial model] is the replacement of normal adversary procedure by . . . the 'investigatory model.'" *Id.* at 110. According to *Sims*, the "SSA 'conduct[s] the administrative review process in an informal, nonadversary manner.'" *Id.* at 111 (quoting 20 C.F.R. § 404.900(b)). It is the responsibility of the Appeals Council, not the claimant, to identify and develop the issues during its plenary review. *See id.* at 111–12. Importantly, the Commissioner is not "a litigant opposing the claimant, but rather just . . . an adviser to the Council regarding which cases are good candidates for the Council to review pursuant to its authority to review a case *sua sponte*." *Id.* at 111. In particular, "[t]he adversarial development of issues by the parties . . . on which [the analogy] depends simply does not exist." *Id.* at 112. Therefore, the *Sims* Court held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.*

In applying this reasoning to SSA ALJ Appointments Clause challenges post-*Lucia*, the Pennsylvania Decisions have adopted *Sims*' limitations of judicially created issue-exhaustion. *See Culclasure*, 2019 WL 1641192, at *6 ("Absent controlling law from our Court of Appeals or a change in Supreme Court direction, we follow *Sims*."); *Bizarre*, 364 F. Supp. 3d at 418 (citing *Sims*, 530 U.S. at 112) ("[T]he Supreme Court has declined to require issue exhaustion at the Appeals Council level."); *Perez*, ECF Doc. No. 15, at 4 ("[U]nlike other agencies, SSA ALJs preside over hearings that are characterized as 'inquisitorial' not 'adversarial.'").

However, we respectfully disagree with the Pennsylvania Decisions' application of *Sims* to Appointments Clause challenges for three reasons. First, it seems improper to, on one hand,

11

transpose *Lucia*'s analysis of what constitutes an "inferior officer," which is based heavily on the adversarial nature of the SEC's process to SSA ALJs, but then, on the other hand, roundly dismiss *Lucia*'s issue-exhaustion requirement because of the "inquisitorial" and decidedly non-adversarial nature of SSA proceedings.[3] *Compare Lucia*, 138 S. Ct. at 2053 ("[P]oint for point—straight from *Freytag*'s list—the [SEC's] ALJs have equivalent duties and powers as STJs in conducting adversarial inquiries."), *with Sims*, 530 U.S. at 110 ("Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker."); *see also Culclasure*, 2019 WL 1641192, at *9 ("[SSA] proceedings, often held informally over a phone or video conference . . . , differ significantly from the adversary processes in the [SEC] or Department of Labor.").

If we are to assume that SSA ALJs are inferior officers, subject to the Appointments Clause, then *Lucia* holds that "'one who makes a timely challenge to the constitutional validity of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055. Nowhere does the Court distinguish a "timely challenge" based on the nature of the particular administrative agency or process in which it's made. Therefore, we cannot cherry-pick select parts of the decision here.

Second, issue-exhaustion requirements are not foreclosed in SSA proceedings when appealing a final decision in federal court. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding that a claimant's failure to raise a disability claim during the administrative process "waived [the claim] from being raised on appeal"); *Bizarre*, 364 F. Supp. 3d at 418

---

[3] We acknowledge again that the Commissioner does not question *Lucia*'s applicability to the SSA. (Def.'s Suppl. Br. in Supp. Obj. 2 n.2 (citing SSR 19-1p, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019)) ("On July 16, 2018, the Acting Commissioner ratified the appointment of the agency's ALJs and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims thereafter.")); *see also Culclasure*, 2019 WL 1641192, at *4 ("The Social Security Administration did not distinguish *Lucia* because it arose in an SEC proceeding.").

(quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."). "*Sims* concerned only whether a claimant must present all relevant issues to the Appeals Council to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'" *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (second alteration in original) (quoting *Sims*, 530 U.S. at 107); *see also Davis*, 2018 WL 4300505, at *9 (citing *Anderson*, 344 F.3d at 814) ("[T]he Eight Circuit's finding in *Anderson*, that a claimant's failure to raise an issue during the administrative process waives the claim from being raised on appeal, is not affected by the holding in *Sims*.").

Finally, the Pennsylvania Decisions acknowledge that "issue exhaustion is quite logical for matters within the expertise of the agency and its ALJs." *See Bizarre*, 364 F. Supp. 3d at 422. However, they do not consider an Appointments Clause challenge to be "squarely within the agency's general authority." *See id.* at 421 (issue exhaustion "makes little sense for constitutional questions which ALJs are powerless to decide"). In particular, the court in *Culclasure* rejected "a reading of *Sims* requiring [it] to craft a caveat on the Supreme Court's direction for judges to avoid creating issue preclusion concepts when the [SSA] does not suggest preclusion. *Absent persuasive authority* or statutory scheme or regulation, [it does] not find support" for the position that plaintiff forfeited his Appointments Clause claim. *Culclasure*, 2019 WL 1651192, at *10 (emphasis added).

However, *Lucia* creates precisely such persuasive authority. *Lucia* clearly places an Appointments Clause challenge within the purview of the agency's appeals council. *Lucia*, 138 S. Ct. at 2055 (finding Appointments Clause challenge timely when raised to the appeals

council). SSA claimants should raise objections to ALJs at the earliest opportunity, 20 C.F.R. § 404.940; therefore Marchant's first opportunity to raise the challenge would have been before the Appeals Council.

### 3. *An Appointments Clause Challenge Need not be Made before the ALJ*

To that effect, we disagree with the ALJ Cases that require claimants to raise an Appointments Clause challenge before the ALJ. *See, e.g.*, *Sprouse*, 363 F. Supp. 3d at 550; *Abbington*, 2018 WL 6571208, at *5. These cases find that, although the Appeals Council conducts a plenary review and can hear all issues, it cannot review issues not already in the case. In order "to be present in a case, [an Appointments Clause claim] must be raised by the claimant before the ALJ." *Sprouse*, 363 F. Supp. 3d at 550. However, a plain reading of *Lucia* considers Appointments Clause challenges "timely" if raised for the first time before the Appeals Council and we see no need to add an additional restriction. *See Lucia*, 138 S. Ct. at 2055.

### B. Raising an Appointments Clause Challenge during the Administrative Proceeding would not have been Futile

Having established that an Appointments Clause challenge must be timely raised during the administrative process, we address Marchant's second claim, which is supported by the Pennsylvania Decisions, that even if she was required to make an Appointments Clause challenge at the administrative level, it would have been futile because "the appointment of SSA's ALJs are outside the purview of the administrative adjudication." (Pl.'s Reply Br. 3 n.2); *see also Culclasure*, 2019 WL 1641192, at *10–11 ("[W]e conclude [plaintiff's] Appointments Clause challenge, even if forfeited, is excused as futile."). Marchant notes that SSA policy, at the time of her hearing, stated that if such a claim is made before the ALJ, the ALJ should "'acknowledg[e] that the issue was raised,' [but note] in the decision that '[the ALJ does] not have the authority to rule on [the] challenge.'" (Pl.'s Reply Br. 30); *see also Culclasure*, 2019

14

WL 1641192, at *11 ("[A]n Appointments Clause challenge, even if required to be made at the ALJ level, would have been futile because the ALJ could not have ruled on the issue."). Although Marchant did not raise her challenge until well after she initiated this action in federal court, she argues that if she had "raised her Appointments Clause objection before the agency, neither the ALJ nor the Appeals Council could have resolved the issue because there were no constitutionally appointed ALJs available to hear the case." (Pl.'s Reply Br. 3.)

However, *Lucia* specifically addresses this situation. *See Lucia*, 138 S. Ct. at 2055 nn. 5 & 6. Where there were either no constitutionally appointed ALJs available, such as in *Lucia* and this case, or if the appeals council, itself, has not been constitutionally appointed, the Court clarified that the "rule of necessity" would apply and the appeals council could decide to hear the claim itself. *See id.* at 2055 n.5 ("[If] there is no substitute decisionmaker, the rule of necessity would presumably kick in and allow the Commission to do the rehearing."); *id.* at 2055 n.6 ("The Commission has not suggested that it intends to assign [plaintiff's] case on remand to [a ratified] ALJ . . . . The SEC may decide to conduct [plaintiff's] rehearing itself. Or it may assign the hearing to an ALJ who has received a constitutional appointment independent of the ratification.").

Furthermore, because the Appeals Council had a clear remedy to deal with an Appointments Clause challenge, raising such a claim would have been appropriate and would not have been futile. In fact, SSA guidelines currently reflect this remedy:

> The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case.

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, [Administrative Appeals Judges] who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision or dismissal. In cases in which the ALJ made a decision, the Appeals Council will conduct a new and independent review of the claims file and either remand the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's decision.

SSR 19-1p, 84 Fed. Reg. 9582.

These updated guidelines not only acknowledge the Appeals Council's role in an Appointments Clause challenge, but provide relief for claimants who made a timely, but unsuccessful challenge. Here, Marchant did not raise the objection before the ALJ or Appeals Council. Had she done so, the challenge would have, at the very least, been "noted" and would have entitled her to relief post-*Lucia*. Therefore, making the challenge during the administrative process would not have been futile. We find that she has waived her Appointments Clause challenge, and she is not entitled to a rehearing on these grounds.

## IV. CONCLUSION

For these reasons, we sustain the Commissioner's objections and overrule Judge Lloret's R. & R. We find that Marchant failed to raise a timely Appointments Clause challenge concerning the ALJ overseeing her hearing by not raising it to the Appeals Council and that such a claim would not have been futile. Accordingly, we refer this case to Judge Lloret for a decision on the merits.

An appropriate Order follows.